```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

Frederick Nashawaty

    v.                                                           Civil No. 15-cv-118-JD
                                                                Opinion No. 2016 DNH 135

Winnipesaukee Flagship Corporation


O R D E R

Frederick Nashawaty brings a claim of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") against his former employer, Winnipesaukee Flagship Corporation ("WFC"). WFC moves for summary judgment. Nashawaty objects.

Standard of Review

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). In reviewing a motion for summary judgment, the court credits the evidence that supports the non-moving party and draws all reasonable inferences in his favor. Burns v. Johnson,

--- F.3d ---, 2016 WL 3675157, at *4 (1st Cir. July 11, 2016). As such, the court's role is not "'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

## Background

Nashawaty worked for WFC from 1988 to 1991 and again from November of 2001 to July of 2013.  He began as a chief engineer, and his supervisor was Darryl Watson, the Director of Mechanical Maintenance and Fleet Engineer.  In 2004, Nashawaty was promoted to Director of Fleet Maintenance and Marine Operations and Fleet Engineer when Watson retired.  He was awarded four stripes, the highest rank at WFC.

As Director of Fleet Maintenance and Marine Operations and Fleet Engineer, Nashawaty was responsible for the maintenance of all WFC vessels and facilities.  He supervised the maintenance staff year round and supervised the engineering staff during the cruising season.  He also was responsible for special projects and upgrades, fueling the vessels, budgeting and purchasing for the department, and serving as chief engineer on cruises.  He was third in command behind WFC's president, Edward Gardner, and the general manager, James Morash.

Generally, like his predecessor as Fleet Engineer, Nashawaty was scheduled to work on week days. If necessary, however, Nashawaty also worked at night and on weekends.

In the fall of 2011, WFC decided to close during the winter, which had not happened in the past. The staff, including Nashawaty, was laid off for the winter. Nashawaty was allowed to take two weeks of his vacation time during the beginning of the lay off period. Work resumed in March of 2012.

WFC hired Richard Orzechowski in the fall of 2011 as a contract laborer. When work resumed in the spring of 2012 Orzechowski was hired as a chief engineer who reported to Nashawaty. Nashawaty noticed that Orzechowski would call Morash whenever Nashawaty told Orzechowski to do something.

In May of 2012, Nashawaty had a conversation with Morash during which Morash told him that he would lose his accrued vacation time that had been earned before WFC decided to close down during the winter.[1] Nashawaty had a little more than 300 hours of vacation time accrued. WFC represents that Nashawaty asked to take Fridays off and that it accommodated his request. Nashawaty states that he offered to take Fridays off to use up his accrued vacation time with as little disruption to WFC

---

[1] Although it is not clearly explained, it appears that Nashawaty previously had used vacation time during the winter when WFC operated all year.

operations as possible.  In any event, beginning in the 2012 season, Nashawaty was not scheduled to work on Fridays although Nashawaty contends that he remained available as needed.

Nashawaty was out of work for two weeks in June of 2012 due to an eye injury.  When he was ready to return on Tuesday, June 19, Morash told Nashawaty to contact Orzechowski "to see where he wants to put you."  Nashawaty found that direction unusual because he was the one who made those decisions.  Nashawaty called Orzechowski and told him that he would work the next day, on the Friday day cruise.

Nashawaty then received a message to meet with Morash and went to Morash's office.  Morash told him that Orzechowski was taking over and that everything Nashawaty did would have to go through Orzechowski.  Morash explained that Nashawaty was not getting any younger and did not need to do that work anymore.[2]  He offered Nashawaty a position as a chief engineer at twenty dollars an hour for the next year, which would pay at most $800 per week compared to Nashawaty's weekly salary of $1,250.  Nashawaty was shocked and angry.  Although Gardner told Nashawaty that Morash was wrong about Orzechowski taking over, subsequent events showed that most of Nashawaty's job

---

[2] At that time, Nashawaty was fifty-nine and Orzechowski was forty-one.

responsibilities were transferred to Orzechowski during the summer of 2012.

Morash directed Nashawaty to teach Orzechowski to refuel the WFC vessels although until then Nashawaty had been the only one to order fuel and refuel the M/S Mount Washington. From then on, Orzechowski ordered fuel and refueled vessels, despite having no training from Nashawaty, so that Nashawaty assumed Morash gave him the information.[3] Orzechowski also took over Nashawaty's responsibilities for ordering supplies, working with manufacturers on maintenance issues, reporting to Gardner and Morash, communicating with the chief engineers, and paying bills. Despite the reduction in his responsibilities, Nashawaty continued to work through November of 2012.

When WFC opened in March of 2013, Nashawaty and Orzechowski worked together to get the shakedown cruise done. In June of 2012, however, Orzechowski hired a new chief engineer without consulting Nashawaty, and Orzechowski did most of the training, although hiring and training had been part of Nashawaty's job.

On June 15, 2013, Morash told Nashawaty that Orzechowski was taking over Nashawaty's position. Morash said they were going to give Orzechowski "the four stripes." Morash also

---

[3] Orzechowski was not a Coast Guard licensed chief engineer, as Nashawaty was, and had little experience working with passenger vessels.

talked about age, getting tired, and that they did not want Nashawaty "to go out like Darryl" who was sixty and had health issues when he retired.  When Nashawaty protested that he wanted to keep his job, Morash said that he should "let the young guys do all the hard stuff" and that Orzechowski was taking over.  He also said that Nashawaty could work as many shifts as he wanted to do.

Nashawaty met with Gardner and told him that he was not getting tired and that he wanted to do his job.  Although Gardner reassured him that Nashawaty was the third most valuable man at WFC, he provided no specifics about what job he would have.  Gardner did not have a second meeting to discuss Nashawaty's role at WFC as he had said he would.  Based on those discussions, Nashawaty understood that he would not be Fleet Engineer and would be working shifts as an hourly employee with a significant reduction in pay.

The job title of Fleet Engineer was not taken from Nashawaty, but he no longer had the responsibilities of that position.  Instead, he was doing the work of a seasonal chief engineer, reporting to Orzechowski, although he was still being paid his salary.  On July 19, 2013, Nashawaty learned that WFC was going to award Orzechowski a fourth stripe, the highest rank at WFC, the next day.  Nashawaty talked to Gardner and

6

understood that he was being demoted because of his age and that Orzechowski was going to run the engineering department.

Nashawaty felt he had no option other than to quit. On July 22, 2013, Nashawaty resigned.

## Discussion

In support of his ADEA claim, Nashawaty alleges that he was constructively discharged because of his age. WFC moves for summary judgment, contending that Nashawaty cannot show that he was constructively discharged. Nashawaty objects, contending that disputed facts preclude summary judgment.

The ADEA prohibits employers from discharging an employee or discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1). A plaintiff may prove age discrimination with direct or circumstantial evidence. Patten v. Wal-Mart Stores East, Inc., 300 F.3d 21, 24 (1st Cir. 2002). Direct evidence "consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." Id. at 25. If direct evidence is lacking, a plaintiff proceeds through the three-step analysis under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).

WFC contends that direct evidence of discrimination is lacking and, therefore, follows the McDonnell Douglas analysis. For the first step, a plaintiff must establish a prima facie case of discrimination by showing that he was older than forty, his work met his employer's legitimate expectations, his employer took adverse action against him, and either younger employees were retained in his position or "the employer did not treat age neutrally in taking the adverse action." DelValle-Santana v. Servicios Legales de P.R., Inc., 804 F.3d 127, 129-30 (1st Cir. 2015). If the plaintiff makes a prima facie case, the defendant must rebut the presumption of discrimination by articulating "a legitimate, nondiscriminatory reason for dismissing the employee." Id. at 130. Then, the plaintiff must show that the employer's reason is a pretext for discrimination and that his age was the reason for the employer's adverse action. Id.

WFC contends that Nashawaty cannot make a prima facie case. In support, WFC argues that the changes in Nashawaty's job did not amount to constructive discharge because Nashawaty was still receiving his salary when he resigned and that Nashawaty's complaints about his treatment amount to only nonactionable ego issues. WFC also contends that Nashawaty cannot show that the treatment he received was motivated by his age because WFC was

8

simply making a business decision to change the number of engineers and to have job duties shared among employees.

Nashawaty asserts that the statements made by Morash and Gardner to Nashawaty about his age and the need for younger people to do the work are direct evidence that their decision to transfer Nashawaty's responsibilities to Orzechowski was motivated by a preference for a younger employee.  Nashawaty also argues that the facts taken in his favor show that he was constructively discharged because of his age and that WFC's explanation is merely a pretext for that discrimination.

It is not necessary to determine for purposes of the present motion whether the referenced statements are direct evidence of discriminatory intent or whether the McDonnell Douglas analysis applies here.  To prove a claim under the ADEA with direct or circumstantial evidence, the plaintiff must show that he suffered an adverse action because of his age.  See Del Valle-Santana, 804 F.3d at 129.  "An adverse employment action is one that affects employment or alters the conditions of the workplace."  Burns, 2016 WL 3675157, at *5.  "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to

resign." Green v. Brennan, 136 S. Ct. 1769, 1776 (2016) (internal quotation marks omitted).

Nashawaty has raised a factual issue as to whether WFC's actions transferring his responsibilities to Orzechowski and marginalizing his role at WFC caused objectively intolerable working conditions for him.[4]  See Burns, 2016 WL 3675157, at *5-*6.  In addition, the statements made by Morash and Gardner about Nashawaty's age and appearing to favor younger workers when Nashawaty was fifty-nine and Orzechowski was forty-one provide evidence of discriminatory intent.  WFC's general explanation that it was simply undertaking business changes does nothing to avoid the apparent ageist tenor of those statements.

Therefore, material factual disputes preclude summary judgment.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 12) is denied.

On April 13, 2016, the defendant notified the court that any attempt to mediate the case would be wholly unsuccessful and

---

[4] WFC relies heavily on Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000), to argue that Nashawaty cannot show constructive discharge.  Whether or not the circumstances in this case would meet the standard suggested in Suarez, the First Circuit has recently analyzed constructive discharge in a more receptive light, reversing summary judgment and remanding for further proceedings.  See Burns, 2016 WL 3675157, at *5-*6.

did not agree to mediation. Now that the motion for summary judgment is resolved, the parties should have a clearer view of the issues and evidence for trial. Before the parties expend the considerable time and resources necessary to prepare for trial, which is scheduled for the period beginning on November 1, 2016, the court expects them to engage in mediation.

Mediation is available through resources provided by the court, or alternatively, the parties may arrange private mediation.

The parties shall file a joint mediation statement **on or before September 14, 2016,** in which the parties state whether mediation has been held or has been scheduled. If mediation has not been held or scheduled by **September 14, 2016,** the parties shall show good cause for failing to do so.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph DiClerico, Jr.
United States District Judge

August 11, 2016

cc: Joseph Henry Driscoll, IV, Esq.
    Leslie H. Johnson, Esq.