```
                 UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

Frederick Nashawaty

    v.                                            Civil No. 15-cv-118-JD
                                                    Opinion No. 2016 DNH 190

Winnipesaukee Flagship Corporation


O R D E R

     Winnipesaukee Flagship Corporation ("WFC") moved to exclude from evidence at trial a damages chart prepared by Frederick Nashawaty's counsel and all mention of future pay damages. Nashawaty objected. In response to discussion during the final pretrial conference, the court allowed Nashawaty to file an additional memorandum on the issue of providing evidence to support a front pay damages award without expert testimony. Nashawaty filed the memorandum, and WFC filed a response.

     In addition, Nashawaty moved to supplement the memorandum with an expert report and disclosed two expert witnesses, suggesting those witnesses might be called at trial. WFC objected to the motion to supplement and moved to strike or exclude the new expert witnesses. The court held a hearing on the damages chart, experts, and front pay damages.

A.  Damages Chart

WFC objects to the "Damages Chart" listed as exhibit 48 in Nashawaty's final pretrial statement. Counsel assumed that exhibit 48 was the same chart that had been produced to counsel on September 29, 2016, the day the final pretrial statements were filed. WFC contends that the chart should be excluded because it was not disclosed as required by Federal Rule of Evidence 26(a)(1)(A)(iii), because the data reported in the chart is incorrect, because the chart does not account for the duty to mitigate damages, and because the claim for front pay damages is too speculative without supporting expert testimony.

In response, Nashawaty states that as part of his initial disclosures under Rule 26(a) he provided his tax forms to WFC and a list of damages for purposes of settlement only. It is far from clear whether that disclosure meets the requirements of Rule 26(a)(1)(A)(iii). On the other hand, WFC apparently never asked for additional disclosures about damages and did not move to compel additional disclosures.

Nashawaty also submitted two damages charts with his response to show his claims for back pay and front pay. The back pay chart shows his lost earnings based on the salary he was receiving when he resigned and, alternatively, based on the salary that Richard Orzechowski received during that time. In

each year $5,000 is added for the amount of unemployment benefits Nashawaty would have received during the winter months when WFC was closed.  He states that he "has a sound basis for his damages numbers, and any alleged errors may be taken up at trial by examination of witnesses."

A chart may be used to provide a summary of voluminous evidence that cannot be presented conveniently in court.  Fed. R. Evid. 1006.  Nashawaty does not rely on Rule 1006 or suggest that the evidence of his lost salary and benefits is voluminous.

A previously created chart may be offered into evidence following Nashawaty's testimony.  The admissibility of the chart will depend on whether or not the chart accurately reflects Nashawaty's testimony.

Alternatively, as Nashawaty suggests, counsel or Nashawaty may be permitted to write the figures on a board or on easel paper as Nashawaty testifies.  The admissibility of a "chalk" created in this manner will ultimately depend on the evidence and testimony surrounding its creation and its accuracy.

No chart may be introduced or referred to during opening statement.

B.  <u>Front Pay Damages</u>

When reinstatement is impossible or impracticable, front pay damages compensate a terminated employee for salary and

benefits that will be lost after the date of the judgment.[1] Johnson v. Spencer Press of Me., Inc., 364 F.3d 368, 380 (1st Cir. 2004).  Front pay damages cannot be based entirely on speculation and should not provide more to the plaintiff than compensation for what will be lost.  Travers v. Flight Servs. & Sys., Inc., 808 F.3d 525, 544 (1st Cir. 2015).  Nevertheless, "[i]n the last analysis a front pay calculation is a prediction of a series of future events."  Trainor v. HEI Hospitality, LLC, 699 F.3d 19, 31 (1st Cir. 2012).  "Finally, front-pay damages, as an award for future damages, must be reduced to present value to account for the difference in the value of money in the future and the value of money today."  Travers, 808 F.3d at 544 (internal quotation marks omitted); see also Hutton v. Essex Group, Inc., 885 F. Supp. 331, 334 (D.N.H. 1994).

  A plaintiff may be able to support a claim for front pay over a short term with his own testimony about his employment intentions.  See Trainor, 699 F.3d at 31.  Front pay damages are intended to be temporary, to compensate the plaintiff during the time it likely to take to find a comparable job.  McPadden v. Wal-Mart Stores East, L.P., 2016 WL 4991488, at *4 (D.N.H. Sept. 16, 2016).  When a plaintiff seeks a longer term of front pay,

---

[1] At the hearing, counsel agreed that reinstatement is not available, making future pay the appropriate remedy.

4

however, more evidence and detail will be needed to support both the amount of damages and the calculation to discount the amount to present value.  See Travers, 808 F.3d at 545.  While an expert witness is not necessary in every case, a claim for long-term front pay damages that is not supported by expert testimony is likely to be too speculative to survive.  Id.; Hutton, 885 F. Supp. at 335.

In this case, Nashawaty seeks front pay from the date of the judgment until 2029, a period of thirteen years.  Nashawaty did not disclose an expert witness within the discovery deadline to support his claim for front pay.  WFC moved to exclude his claim for front pay on the ground that the claim is too speculative to be allowed, particularly in the absence of expert testimony.  In response to WFC's motion to exclude his front pay claim, Nashawaty argued that an expert was not necessary and, in the alternative, that the court could make the determination of the length of time for the front pay award.

Nashawaty then filed a supplemental memorandum, as allowed by the court, to show what proof would be offered at trial to support the front pay claim.  In the memorandum, Nashawaty explained that he would testify about his plans to work into his seventies and would testify about and provide evidence of the salary and benefits he would have received if he had continued

to work at WFC. Nashawaty also suggested that a shorter period of time, until his eligibility for Social Security benefits at sixty-six or until he turned seventy, would be easier for the front pay calculation.

Nashawaty continued to argue that the jury could do the calculations necessary for a front pay award and provided examples of appropriate discount rates. In the alternative, however, Nashawaty proposed that if the jury found that he was entitled to front pay and determined the number of years he would have earned salary and benefits, the court could hold a post-verdict hearing on the issue of discounting the award to present value. Based on information presented by the parties, Nashawaty proposed, the court could take judicial notice of the interest rate and inflation rate in order to discount the award to present value.

After the deadline, Nashawaty moved for leave to file a supplement to his memorandum. He represented that he had found experts to support his front pay claim and submitted their report. The report in is the form of a letter from John M. Dellipriscoli, Economist, and Lawrence D. Copp, Director and Senior Economist, who work for Economic & Policy Resources. Nashawaty also included Dellipriscoli and Copp on his witness list.

WFC filed a response to Nashawaty's supplemental memorandum, reasserting that Nashawaty lacks the evidence to support a front pay award.  WFC contends that Nashawaty's own testimony is insufficient to support an award of front pay and that expert testimony is necessary to provide information about how long Nashawaty might have worked and the discount rate.  WFC also faults Nashawaty for failing to address his duty to mitigate damages.  In addition, WFC objects to Nashawaty's attempt to add two expert witnesses at this stage of the litigation and moves to exclude the expert witnesses from testifying.

   1.  New Experts

Nashawaty did not disclose Dellipriscoli or Copp as expert witnesses within the time allowed in the discovery plan.  He also has not moved to reopen discovery, to amend the discovery plan, or shown that his failure to disclose the new experts is substantially justified or harmless.  WFC objects to the late disclosure and asks the court to preclude the experts from testifying.

Trial is scheduled to begin next week, which would have to be rescheduled if Nashawaty were allowed to proceed with the newly disclosed expert witnesses.  Therefore, neither Dellipriscoli nor Copp, nor any other undisclosed expert, will

be allowed to testify at trial or for any other purpose, including post-trial proceedings, and the information in their letter is not admissible.  Fed. R. Civ. P. 37(c)(1).

### 2.   Front Pay Damages Procedure

WFC moves to exclude Nashawaty's claim for front pay damages on the ground that he lacks evidence to support the claim.  In particular, WFC contends that Nashawaty must have expert testimony to support the claim and to provide the means for reducing any award to present value.  Nashawaty argues that expert testimony is not required and that he can support the claim with his own testimony and other evidence.

Nashawaty's proffer of the evidence he will provide to support his claim for front pay damages shows that there is enough to maintain the claim for trial.  See Travers, 808 F.3d at 546.  With respect to the issue of mitigation, as long as Nashawaty has made some effort to find a new job, the burden is on WFC to prove to the jury that he has not mitigated his damages.[2]  Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 16 (1st Cir. 1999).  Discounting any award of front pay damages to

---

[2] In his supplemental memorandum, Nashawaty represented that "he has made approximately 700 contacts" in an effort to find a new job.

present value, however, requires additional information that will not be presented to the jury.

Generally, an award of front pay is an equitable remedy that is "entrusted to the district court's discretion." Johnson, 364 F.3d at 380; Lussier v. Runyon, 50 F.3d 1103, 1108 (1st Cir. 1995).  In some cases, however, the parties and the court may treat front pay as an element of damages that is submitted to the jury.  Trainor, 699 F.3d at 31, n.3.  In other cases, the court may submit the question of front pay damages to the jury for an advisory verdict, which the court may or may not accept.  See McPadden, 2016 WL 4991488, at *4-*5.

In this case, the following procedure will be used to determine whether front pay damages will be awarded.

Nashawaty will be allowed to present his claim for front pay damages to the jury for an advisory verdict.  If the jury finds in favor of Nashawaty on the ADEA claim, the jury then will be asked to provide an advisory verdict of how many years Nashawaty would have continued to work at WFC, if any, and the amount of front pay damages, if any, without discounting.

The court, however, will make the final decision on whether front pay damages will be awarded and the amount of those damages, if any.  The court will make that decision after

considering the advisory verdict and after the parties have had an opportunity to be heard on the front pay issues.

After the verdict, Nashawaty will file a memorandum in support of an award of front pay damages, addressing both the grounds for awarding front pay damages and the process for reducing an award to present value. With respect to present value, Nashawaty will explain the process he asks the court to use to reduce an award to present value, will include the relevant information for that determination, and will provide the reasons that support taking judicial notice of that information. WFC will then file its response in which it may challenge the sufficiency of the evidence of front pay damages and the method and rates used for discounting to present value.

A hearing will be held on the front pay damages issue. Following the hearing, the court will decide whether there is sufficient evidence to support an award of front pay damages. If front pay damages are to be awarded, they will be reduced by the court to present value.

## Conclusion

For the foregoing reasons, the defendant's motion to exclude a damages chart and any reference to front pay damages (document no. 54) is denied.

The plaintiff's motion to supplement (document no. 75) is denied.

The defendant's motion to exclude (document no. 79) is granted.

A damages chart may be allowed as described in this order but only if the necessary evidentiary prerequisite is met at trial. No damages chart may be shown or referenced during opening statements.

The jury will provide an advisory verdict as to whether Mr. Nashawaty is entitled to front pay damages and, if so, the number of years he would have worked and the amount of front pay damages.

After the verdict, the parties will brief the issues pertaining to front pay damages and the court will hold a hearing. The court will then decide whether to award front pay damages and calculate the amount of the award.

The court will set a schedule for post-trial briefing and a hearing, if necessary, after the jury's verdict.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph DiClerico, Jr.
United States District Judge

October 28, 2016
cc:  Joseph Henry Driscoll, IV, Esq.
     Leslie H. Johnson, Esq.

David S. Osman, Esq.
Ellen Purcell, Esq.